1  Law Offices of Todd M. Friedman, P.C.
Todd M. Friedman, Esquire (216752)
2  tfriedman@attorneysforconsumers.com
21550 Oxnard St., Ste 780
3  Woodland Hills, CA 91367
Tel: 877-206-4741
4  Fax: 866-633-0228

5

*Attorney for Plaintiff*

6

7  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9  MICHAEL PALLAGROSI, on behalf of himself and all others similarly situated, | Case No.: |
| 10 | |
| 11  Plaintiff, | **CLASS ACTION COMPLAINT** |
| | **& JURY TRIAL DEMAND** |
| 12  v. | |
| 13  THE GAP, INC.; GAP (APPAREL) LLC; GAP INTERNATIONAL SALES, INC.; BANANA REPUBLIC, LLC; and BANANA REPUBLIC (APPAREL) LLC, | |
| 14 | |
| 15 | |
| 16  Defendants. | |

17       Plaintiff Michael Pallagrosi, individually and on behalf of all others similarly situated,

18  through his undersigned attorneys, files this class action complaint against Defendants and alleges

19  as follows:

20                    **NATURE OF THE ACTION**

21       1.       Plaintiff brings this proposed class action against Defendants alleging violations of

22  federal pricing regulations and the consumer protection laws of California, New Jersey and

23  Florida, as well as the common law.

24       2.       Specifically, it is alleged that Defendants engaged in a uniform policy of advertising

25  fictitious purported former prices and percentage-off discounts in the advertising, marketing, and

26  sale of apparel and other personal items at their Banana Republic Factory and Gap Factory stores.

27

28

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
**21550 OXNARD ST., STE 780**
**WOODLAND HILLS, CA 91367**

This scheme, which is set forth in more detail herein, may be summarized as follows.

3. First, Defendants have a uniform policy of creating and listing an arbitrary "fake" base price on the price tag of every item offered for sale in their Banana Republic Factory and Gap Factory stores throughout the United States. This is an artificially high price that purports to be – but is not – each item's original or regular, non-discounted price (hereafter "fake base price"). See Exhibit A, Banana Republic Factory Store Receipt, stating the base price of the **"Aiden Camo"** purchased by Plaintiff Pallagrosi as **"$24.99."** These fake base prices are created by Defendants, using a set of uniform criteria created by Defendants, and are not based on any real prices at which the items in question are actually sold or offered for sale by Defendants or their competitors. Indeed, the fake base prices are much higher than the prices at which the items in question are actually sold or offered for sale by Defendants. These fake base prices are then used by Defendants to create the misleading impression in the minds of consumers that the prices of the items have been "discounted" when Defendants offer to sell these items at a price far lower than the fake base price. See Exhibit A, Banana Republic Factory Store Receipt, stating there was an **"Item Discount 50%"** on the **"Aiden Camo"** purchased by Plaintiff Pallagrosi, resulting in a purported sale price of **"$12.49."** In actuality, the lower, purportedly discounted prices are the prices at which Defendants consistently and regularly sell the items in question. In fact, the overwhelming majority of these items are never actually sold or offered for sale at the higher fake base price listed on the items' price tags for any length of time. In a very few cases, the items are offered for sale at the fake base price, but only for a very few days. When this is done, it is done solely to bolster the claim that the item has been "discounted" when, a few days later, Defendants offer the item at a lower, purportedly discounted price. None of the items offered for sale in Defendants' Banana Republic Factory and Gap Factory stores are ever consistently sold at the higher fake base prices. For all such items, the prices at which the items are consistently and regularly sold by Defendants is actually the lower, purportedly-discounted prices.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

4.     Second, Defendants perpetually advertise the items for sale on uniformly-worded signs in their Banana Republic Factory and Gap Factory stores. See Exhibit B, **"50% OFF"** sign in Defendants' Banana Republic Factory store. This practice is deceptive and misleading because the advertised percentage-off discounts claimed on such signs – such as **"50% OFF"** – do not represent an actual discount. Rather, the purported percentage–off discount listed on such signs merely represents the difference between the higher fake base price created by Defendants and the lower, purportedly-discounted price at which Defendants regularly sell the item in the normal course of business.

5.     Third, Defendants bolster the above-referenced scheme by presenting customers at their Banana Republic Factory and Gap Factory stores with a written receipt which states **"You Saved [a specific dollar amount]"** and/or **"Total Discount [a specific dollar amount]."** See Exhibit A, Pallagrosi Receipt from Banana Republic Factory store, stating **"You Saved 79.24."** The statements on these receipts are false and misleading. The amount of the purported "savings" listed on such receipts is simply the difference between the higher fake base price created by Defendants and the lower purportedly-discounted price at which the item is regularly and consistently sold by Defendants in the ordinary course of business.  Thus, the purported "savings" claimed on such receipts are entirely illusory. Customers are not actually saving anything. They are simply buying an item at the same price at which Defendants regularly and consistently sell the item in question.

6.     Defendants' policies as described herein are unlawful. Federal regulations prohibit the advertising of fake former prices, "phantom" price reductions and deceptive claims of percentage-off discounts which are based on inflated, fictitious "regular" prices that never actually existed.  See 16 C.F.R. § 233.1.

7.     Moreover, the consumer protection laws of California, New Jersey and Florida prohibit deceptive advertising, marketing, and sales practices, including advertising and selling

items at purported discounts and offering purported discounts that do not actually exist.

8. By advertising these purported percentage-off discounts and these fake former prices, Defendants have violated California, New Jersey and Florida consumer protection laws as well as federal regulations, specifically as alleged herein.

9. Plaintiff brings this lawsuit against Defendants to recover for the proposed classes of customers of Gap Factory and Banana Republic Factory stores the overcharges that they paid, and to obtain for those customers the actual discounts they were promised and entitled to receive but did not due to Defendants' deceptive practices.

## PARTIES

10. Plaintiff Michael Pallagrosi is an individual and citizen of Burlington County, New Jersey. During the class period, Plaintiff Pallagrosi purchased goods from Defendants' Banana Republic Factory stores located in Florida and New Jersey, was subjected to the practices alleged herein, and suffered an ascertainable loss and monetary damages as a result of Defendants' unlawful conduct alleged herein.

11. Defendant The Gap, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of Delaware and California.

12. Defendant Gap (Apparel) LLC is a for-profit limited liability company formed and existing under the laws of the State of California with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

13. Defendant Gap International Sales, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of Delaware and California.

14. Defendant Banana Republic, LLC is a for-profit limited liability company formed

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

and existing under the laws of the State of Delaware with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of Delaware and California.

15. Defendant Banana Republic (Apparel) LLC is a for-profit limited liability company formed and existing under the laws of the State of California with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

16. All Defendants have a parent-subsidiary relationship, in that Defendants Gap (Apparel) LLC, Gap International Sales, Inc., Banana Republic, LLC, and Banana Republic (Apparel) LLC are each wholly-owned subsidiaries of Defendant The Gap, Inc.

17. At all times during the relevant class period, Defendants together owned and operated, and continue to own and operate, hundreds of Banana Republic Factory retail stores and Gap Factory retail stores throughout the United States.

18. All uniform policies alleged herein, including the advertisement of fake former prices on price tags, uniformly-worded signs claiming fictitious percentage-off discounts of the type of which Exhibit B is an example, and written receipts bearing the false claim that **"You Saved [a specified dollar amount]"** as exemplified by Exhibit A, exist at all Gap Factory stores and Banana Republic Factory stores in the United States.  See, e.g., Exhibit C, Photograph of similar signs in Gap Factory stores, and exemplar receipt from Gap Factory store containing identical **"You Saved [a specified dollar amount]"** language.  Because their policies are in force at both Gap Factory stores and Banana Republic Factory stores, it is clear that these uniform policies originated with, emanated from, and were endorsed and ratified by, the parent corporation which owns and manages both sets of stores:  Defendant The Gap, Inc. Indeed, Gap, Inc. is the only entity empowered to command that these same policies be followed by its subsidiaries at both Gap Factory stores and Banana Republic Factory stores.

19. Defendants jointly operate the Gap Factory stores and Banana Republic Factory

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

stores out of their headquarters in California, which operation entails, inter alia, the creation and implementation of the advertising, marketing, and sales policies described herein, including the sale of items.

20.     Defendants created the policies and procedures described herein and, at all times during the relevant class period, participated in, endorsed, implemented, and performed the conduct alleged herein.

21.     Under the principles articulated in cases such as Pecover v. Elec. Arts Inc., No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *49-52 (N.D. Cal. Dec. 21, 2010) and Keilholtz v. Lennox Hearth Products Inc., 268 F.R.D. 330 (ND Cal 2010), the application of California law to the claims of all class members, regardless of where the class member's purchase occurred, is appropriate because:

> **a.  The uniform policies and procedures described herein were created by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;**
>
> **b.  The instructions and orders needed to carry out the nationwide uniform scheme alleged herein were issued by Defendants from their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;**
>
> **c.  The amounts of the fake base prices and false percentage-off discounts described in this complaint were created by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105; and**
>
> **d.  The individual Gap Factory stores and Banana Republic Factory stores had no discretion in implementing this nationwide policy and had no choice but to follow the instructions and policies formulated by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105.**

## JURISDICTION AND VENUE

22.     This Court has in personam jurisdiction over the Defendants because, inter alia, Defendants: (a) are headquartered in the State of California; (b) transacted business in this state; (c) maintained continuous and systematic contacts in this state prior to and during the class period;

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

and (d) purposefully availed themselves of the benefits of doing business in this state. Accordingly, the Defendants maintain minimum contacts with this state which are more than sufficient to subject them to service of process and to comply with due process of law.

23.     This Court has federal jurisdiction over the subject matter of this action by virtue of the fact that this is a proposed class action where the amount in controversy, exclusive of interest and costs, exceeds $5,000,000 and Plaintiff and at least one Defendant are citizens of different states.

24.     Venue is proper in the County of San Francisco because Defendants are citizens of this County, in that the principal place of business and headquarters for each Defendant is located in this County.

## THE UNIFORM POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

25.     One of the most effective techniques in advertising is for a seller to offer customers a reduction from either the seller's own former price for an item, or the price at which the item or an equivalent item is sold by a competitor.

26.     This technique is widely used because sellers know the truth of the old adage "everyone loves a bargain" and understand that a product's "regular" price – the price at which a product is generally sold in the marketplace – matters to consumers.

27.     Indeed, numerous studies show that a consumer is much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have previously sold the product; where they are being told that an item is worth much more than what they are currently being asked to pay for it.

28.     For example, a well-respected study by Dhruv Grewal & Larry D. Compeau, "Comparative Price Advertising: Informative or Deceptive?", 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that **"[b]y creating an impression of savings, the presence of a higher**

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

**reference price enhances [consumers'] perceived value and willingness to buy [a] product."**

29.    Numerous other articles and studies have reached the same conclusion. See Compeau & Grewal, in "Comparative Price Advertising: Believe It Or Not", J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that **"decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal" and concluding that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."**); Joan Lindsey-Mullikin & Ross D. Petty, "Marketing Tactics Discouraging Price Search: Deception and Competition", 64 J. of Bus. Research 67 (January 2011) (concluding that **"[r]eference price ads strongly influence consumer perceptions of value"**); Praveen K. Kopalle & Joan Lindsey-Mullikin, "The Impact of External Reference Price On Consumer Price Expectations", 79 J. of Retailing 225 (2003), (concluding that **"research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value"** and **"have a significant impact on consumer purchasing decisions."**); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, "An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product", 6 J. of App'd Bus. Res. 1 (1990) (concluding that **"consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."**)

30.    Where the former prices listed by the seller are genuine – where the buyer really is getting an item for a lower price than the one at which it is ordinarily sold – then the "bargain" promised in a seller's advertising may be real.

31.    Unfortunately, the case at bar is not such a case.

32.    The case at bar involves a tactic designed to trick consumers into thinking they are getting a "bargain," based on the use of fictitious former prices which do not reflect a real price at which the items in question have ever actually been sold by either Defendants or their

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

competitors in the marketplace; a fake former price whose only purpose is to convince consumers that Defendants' current price for the item is so far below the price ordinarily charged for such an item that they cannot pass the "bargain" up.

33.    The law recognizes the abuses which can flow from the use of such fictitious former prices and fake claims of "discounts" based on such prices.

34.    For example, 16 C.F.R. § 233.1. specifically prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed. _See_ 16 C.F.R. § 233.1., stating:

**"§ 233.1  Former price comparisons.**

**(a)  One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the 'reduced' price is, in reality, probably just the seller's regular price.**

**(b)  A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, 'Formerly sold at $___'), unless substantial sales at that price were actually made.**

\*          \*          \*

**(d)  Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of**

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

**business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced." (emphasis added)**

35.     16 C.F.R. § 233.1(b) makes clear that, any statement describing a purported former price is deceptive <u>unless</u> the purported price comparison is based on a real price at which the item in question was actually sold in the recent past for a substantial period of time. <u>See</u> 16 C.F.R. § 233.1(b): requiring **"that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business…"**

36.     California law also recognizes that the tactic of using a false comparison price to lure consumers into believing they are getting a discount is a misleading and deceptive sale tactic, actionable. <u>See</u> <u>Hinojos v. Kohl's Corp.</u>, 718 F.3d 1098, 1101 (9th Cir. 2013):

> **"Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. <u>Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price.</u> *Because such practices are misleading – and effective – the California legislature has prohibited them***." (emphasis added)

37.     Similarly, New Jersey law prohibits the use of purported discounts and false or deceptive statements regarding former prices to try to induce a purchase and requires any statements regarding former prices and purported discounts to be clear, truthful and accurate. <u>See</u> e.g. <u>N.J.A.C.</u> § 13:45A-9.6, entitled **"Pricing; prohibition on fictitious pricing and methods of substantiation"** which states:

> **"(a) <u>An advertiser shall not use a fictitious former price</u>. Use of a fictitious former price will be deemed to be a violation of the [New Jersey] Consumer Fraud Act.**
>
> **(b) A former price or price range or the amount of reduction shall be**

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

deemed fictitious if it cannot be substantiated, based upon proof:

1. **Of a substantial number of sales of the advertised merchandise, or comparable merchandise of like grade or quality made within the advertiser's trade area in the regular course of business at any time within the most recent 60 days during which the advertised merchandise was available for sale** prior to, or which were in fact made in the first 60 days during which the advertised merchandise was available for sale following the effective date of the advertisement;

2. **That the advertised merchandise, or comparable merchandise of like grade or quality, was actively and openly offered for sale at that price within the advertiser's trade area in the regular course of business during at least 28 days of the most recent 90 days before or after the effective date of the advertisement; or**

3. That the price does not exceed the supplier's cost plus the usual and customary mark-up used by the advertising merchant in the actual sale of the advertised merchandise or comparable merchandise of like grade or quality in the recent regular course of business." (emphasis added)

38.    Moreover, for items with a price of less than $100, <u>N.J.A.C.</u> §13:45A-9.3(a)(3) provides that a seller must comply with <u>N.J.A.C.</u> §13:45A-9.4(a)(6), which requires a seller to specifically:

"**6. Set forth with specificity when in the remote past a former price of an item of merchandise was effective if it was not actively or openly offered for sale within the advertiser's trade area in the regular course of business during at least 28 of the 90 days before the effective date of the advertisement.** In this regard, when advertising a seasonal sale, such as Christmas dishes, pool supplies, outdoor furniture, etc., actual dates, specific holidays or terms such as 'last season,' may be used to describe when the former price was used in the remote past." (emphasis added)

39.    Similarly, Florida Statute § 501.202(2) protects consumers from "unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2).  A deceptive practice is one that is "likely to mislead" consumers. <u>Davis v. Powertel, Inc.</u>, 776 So.2d 971, 974 (Fla. 1st DCA 2000). An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' "<u>Samuels v. King Motor Co. of Boca Raton</u>, 782 So.2d 489, 499 (Fla. 4th DCA

2001).

40.     Neither the federal regulations, nor California law, nor Florida law, nor New Jersey law permits a seller to simply invent a fake former price to use in its advertising. Rather, a purported former price advertised by the seller must be a real price at which someone in the seller's trade area actually offered the item for sale for a substantial period of time in the recent past.

41.     Defendants' uniform policy ignores these principles.

42.     Defendants have a uniform policy of creating and listing an artificially high fake base price on the price tag of every item offered for sale in their Banana Republic Factory stores and Gap Factory stores throughout the United States; a price which purports to be each item's original or regular, non-discounted price.

43.     These fake base prices are created by Defendants, using a set of uniform criteria created by Defendants, and are not based on any real prices at which the items in question are actually sold or offered for sale by Defendants or their competitors.

44.     These fake base prices are much higher than the prices at which the items in question are actually sold or offered for sale by Defendants or their competitors in the regular course of business.

45.     Such fake base prices are used by Defendants to create the misleading impression in the minds of consumers that the prices of the items have been "discounted" down from the higher fake base prices when Defendants offer to sell these items at a price far lower than the fake base price, often at a purported **"50% OFF"** discount. <u>See</u> Exhibit B, Sample **"50% OFF"** signs

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

used by Defendants.

46.     In actuality, however, the lower, purportedly discounted prices are the prices at which Defendants consistently and regularly sell the items in question.

47.     Put simply, under Defendants' uniform policy, the purported "discount" price is actually the "real" price at which Defendants regularly and customarily sell the items.

48.     The purported "original" price listed by Defendants is a ruse because the overwhelming majority of these items are never actually sold or offered for sale at the higher fake base price listed on the items' price tags for any length of time.

49.     In a very few cases, the items are offered for sale at the fake base price, but only for a very few days. In the rare cases when this is done, it is done solely to bolster Defendants' claim that the item has been "discounted" when, a few days later, Defendants offer the item at a drastically lower, purportedly discounted price.

50.     The practice of offering an item for sale at a higher price for a short period of time, so that a seller can then claim in its advertising that it is "discounted" when the seller lowers the price a few days later, is deceptive and specifically prohibited by 16 C.F.R. § 233.1(b), which provides that a statement of a claimed former price is deceptive unless **"the product was openly and actively offered for sale, <u>for a reasonably substantial period of time</u>, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based." (emphasis added)**

51.     None of the items offered for sale in Defendants' Banana Republic Factory stores and Gap Factory stores are ever sold for a reasonably substantial period of time at the higher fake base prices. Indeed, the overwhelming majority of the items were never sold at the higher fake base price for any period of time. For all items, the prices at which the items are consistently and

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

regularly sold by Defendants are actually the lower, purportedly-discounted prices.

52.     Defendants' deceptive scheme is bolstered by certain related uniform policies.

53.     Using the fake base price as a starting point, Defendants then perpetually advertise the items for sale on uniformly-worded signs in their Banana Republic Factory and Gap Factory Stores, claiming that the items are being sold for a specified percentage-off discount. See Exhibit B, **"50% OFF"** sign in Defendants' Banana Republic Factory store; Exhibit C, **"40% OFF"** sign in Defendants' Gap Factory store.

54.     This practice is false and misleading because the advertised percentage-off discounts on such signs – such as **"50% OFF"** – do not represent an actual discount.

55.     Rather, the purported percentage-off discount listed on such signs merely represents the difference between the higher fake base price created by Defendants and listed on the item's price tag and the lower, purportedly-discounted price at which Defendants regularly sell the item in the normal course of business.

56.     Defendants also bolster the above-referenced scheme by presenting customers at Banana Republic Factory and Gap Factory stores with a written receipt which states **"You Saved [a specific dollar amount]"** and/or **"Total Discount   [a specific dollar amount]."** See Exhibit A, Receipt from Banana Republic Factory store, stating **"You Saved 79.24"**; Exhibit C, Exemplar receipt from Gap Factory store, stating **"You Saved 6.80."**

57.     These written statements on these receipts that **"You Saved"** a specified dollar amount are false and misleading. Again, the amount of the purported "savings" listed on such receipts is simply the difference between the higher fake base price created by Defendants and listed on the item's price tag and the lower price at which the item is regularly and consistently sold by Defendants in the ordinary course of business.

58.     Thus, the purported "savings" claimed on such receipts is entirely illusory. Customers are not actually saving anything. They are simply buying an item at the price at which

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

Defendants regularly and consistently sell the item.

59. These exact same uniform policies described herein, including the creation and use of inflated, fake former prices, signs falsely advertising a percentage-off discount from the fake former prices, and receipts stating to the customer **"You Saved"** a specific dollar amount based on the difference between the purported discount price and the fake former price, are all used at all Banana Republic Factory and Gap Factory stores in the United States, without exception.

60. What happened to Plaintiff helps illustrate Defendants' unlawful practices described herein.

61. On various dates between 2011 and the present, including October 13, 2014 and October 24, 2016, Plaintiff Pallagrosi made purchases at Banana Republic Factory stores in New Jersey and Florida and was subjected to the practices described herein.

62. For example, on October 13, 2014, Plaintiff Pallagrosi purchased three pairs of **"CAMO SOCK"s,** SKU #46326, from a Banana Republic Factory store # 1919, located at 1755 West Palm Beach Lakes Boulevard, West Palm Beach, Florida.

63. The price tag on each **"CAMO SOCK"** listed a purported former price of **"$8.50,"** but each item was sold to Plaintiff at a purportedly discounted sale price of **"$4.25."** These claims were repeated on Plaintiff's receipt, which listed a purported original price of **"$8.50"** and a purported sale price of **"$4.25"** for each of these three items. See Exhibit A.

64. The rack where these items were located had above it a sign which stated **"50% OFF"**.

65. Believing he was getting three items which had previously sold for $8.50 each – items he therefore justifiably believed were worth $8.50 each – Plaintiff Pallagrosi purchased the three items for a purportedly discounted price of $4.25 each. See Exhibit A, Pallagrosi Receipt.

66. Mr. Pallagrosi also purchased a pair of **"AIDEN CAMO"** pants on the same day at the same store.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

67.     The price tag on the **"AIDEN CAMO"** pants listed a purported former price of **"$24.99,"** but the pants were sold to Plaintiff at a purportedly discounted sale price of **"$12.49."** These claims were repeated on Plaintiff's receipt, which listed a purported original price of **"$24.99"** and a purported sale price of **"$12.49."** <u>See</u> Exhibit A.

68.     The **"AIDEN CAMO"** pants were also displayed beneath a sign that stated **"50% OFF."**

69.     Believing he was getting pants which had previously sold for $24.99 – pants he therefore justifiably believed were worth $24.99 – Plaintiff Pallagrosi purchased the pants for a purportedly discounted price of $12.49. <u>See</u> Exhibit A, Pallagrosi Receipt.

70.     This belief by Mr. Pallagrosi that he was getting items worth twice as much as he was being asked to pay for them was bolstered by the receipt he was given, which stated for each item **"Item Discount 50%"** and **"You Saved 79.24"**. <u>See</u> Exhibit A.

71.     In actuality, the CAMO SOCK's purchased by Mr. Pallagrosi were never sold by Defendants or anyone else for $8.50 a pair.

72.     That $8.50 price listed on the CAMO SOCK's price tag was created by Defendants and was not based on any price at which that item had ever been sold. Rather, that fake former price was created to do exactly what it did: induce a customer to purchase the socks by making him believe he was getting an item worth twice as much as he was currently being asked to pay for it.

73.     In actuality, the CAMO SOCK's were not **"50% OFF,"** they had never been sold for $8.50, and the true value of the item was, at most, the same price at which Defendants consistently sold that item: $4.25.

74.     Nor did the "AIDEN CAMO" pants purchased by Mr. Pallagrosi ever actually sell for $24.99. That purported former price of $24.99 was a fake former price created by Defendants and was not based on any real price at which the item was ever sold.

75.     In actuality, the AIDEN CAMO pants were not **"50% OFF,"** they had never been sold for $24.99, and the true value of the item was, at most, the same price at which Defendants consistently sold that item: $12.49.

76.     Thus, the statements on Mr. Pallagrosi's receipt which stated **"Item Discount 50%"** and **"You Saved 79.24"** were entirely false, as Plaintiff did not actually receive either the promised discount or the promised savings.

77.     In addition, Plaintiff Pallagrosi made purchases at Banana Republic Factory stores in New Jersey during the class period.

78.     For example, Mr. Pallagrosi made purchases on October 24, 2016 at a Banana Republic Factory store located at 2000 Atlantic Avenue, Atlantic City, New Jersey, 080401. In particular, Mr. Pallagrosi purchased a pair of **"Fulton Chino"** pants, SKU No. 393532-141-3230, for $35.69 at a Banana Republic Factory store located at 2000 Atlantic Avenue, Atlantic City, New Jersey, 080401. These pants bore a price tag which stated they were originally sold for **"$59.99,"** and they were displayed beneath a sign that stated **"30% OFF."** In actuality, the **"$59.99"** price listed on these pants was invented by Defendants and was not based on any price at which that item had ever been sold. Rather, that fake former price was created to do exactly what it did: induce a customer to purchase a shirt by making him believe he were getting an item worth much more than he was currently being asked to pay for it. In actuality, these pants were not **"30% OFF,"** they had never been sold for $59.99, and the true value of the item was, at most, the same price at which Defendants consistently sold that item: $35.69.

79.     Mr. Pallagrosi also purchased a pair of **"Brushed Twill"** pants, SKU No. 246950-021-3230, for $35.69 at a Banana Republic Factory store located at 2000 Atlantic Avenue, Atlantic City, New Jersey, 080401. These pants bore a price tag which stated they were originally sold for **"$69.99,"** and they were displayed beneath a sign that stated **"40% OFF."** In actuality, the **"$69.99"** price listed on these pants was invented by Defendants and was not based on any

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

price at which that item had ever been sold. Rather, that fake former price was created to do exactly what it did: induce a customer to purchase a shirt by making him believe he were getting an item worth much more than he was currently being asked to pay for it. In actuality, these pants were not "40% OFF," they had never been sold for $69.99, and the true value of the item was, at most, the same price at which Defendants consistently sold that item: $35.69.

80.    Mr. Pallagrosi also purchased a **"Dorito Crew"** shirt, SKU No. 247201-011-0002, for $5.78 at a Banana Republic Factory store located at 2000 Atlantic Avenue, Atlantic City, New Jersey, 080401. This shirt bore a price tag which stated it had originally sold for **"$16.99,"** and it was displayed beneath a sign that stated **"60% OFF."** In actuality, the $16.99 price listed on this shirt was invented by Defendants and was not based on any price at which that item had ever been sold. Rather, that fake former price was created to do exactly what it did: induce a customer to purchase a shirt by making him believe he were getting an item worth much more than he was currently being asked to pay for it. In actuality, this shirt was not **"60% OFF,"** it had never been sold for $16.99, and the true value of the item was, at most, the same price at which Defendants consistently sold that item: $5.78.

81.    Moreover, the quality and value of these items were lower than claimed by Defendants, as they had never been sold for the claimed higher base prices listed on Defendants' price tags and therefore the true worth of the items must be valued at or below the lower prices at which Defendants routinely sold them.

82.    What happened to the Plaintiff was not an accident or an isolated incident.

83.    Rather, it was part of a series of interlocking uniform policies in which Defendants engaged in a systematic scheme of false and misleading advertising, marketing, and sales practices with the purpose of persuading customers to purchase items from Defendants' Gap Factory and Banana Republic Factory stores.

84.     Plaintiff and the class members relied on Defendants' false price comparison advertising; a reliance which was not only reasonable, but entirely intended by Defendants.

85.     Indeed, empirical marketing studies have noted an incentive for retailers to engage in this false and fraudulent behavior. <u>See</u> Comparative Price Advertising: Informative or Deceptive?, Dhruv Grewal and Larry D. Compeau, Journal of Public Policy & Marketing, Vol. 11, No. 1, at 55-56 (Spring 1992):

> **"By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value."**

86.     The unlawful uniform policies alleged herein go well beyond the items that Plaintiff purchased, and are applied by Defendants to every item of clothing in every one of Defendants' Gap Factory and Banana Republic Factory stores in the United States.

87.     These deceptive advertising, marketing, and sales practices were kept secret, and were affirmatively and fraudulently concealed from customers by Defendants throughout the class period.

88.     As a result, Plaintiff and his fellow Gap Factory and Banana Republic Factory store customers were unaware of Defendants' unlawful conduct and did not know they were actually paying the everyday, regular prices for Defendants' products, rather than the advertised, purported discount prices.

89.     Plaintiff and the class members did not discover, nor could they have discovered through reasonable diligence, that Defendants were violating the law until shortly before this litigation was initially commenced, because Defendants used methods to avoid detection and to conceal their violations of the law.

90.     Defendants did not tell or otherwise inform Plaintiff or the class members that they were engaged in the deceptive advertising, marketing, and sales practices alleged herein.  By their

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

very nature, Defendants' unlawful practices were self-concealing.

91.     In sum, Defendants induced Plaintiff and the class members to purchase items from Defendants' Gap Factory and Banana Republic Factory stores, for Defendants' profit, with the promise of discounts that never existed, using claims of inflated, false former prices.  As a result of this unlawful, deceptive conduct, Plaintiff and the class members have suffered damages as set forth herein.

## CLASS ACTION ALLEGATIONS

92.     **Class Definition:**  Plaintiff Pallagrosi brings this action as a class action pursuant to Fed.R.Civ.P. 23, seeking damages under California law on behalf of himself and all members of the following proposed class:

> **All persons who purchased any purportedly discounted item from a Banana Republic Factory or Gap Factory store in the United States between October 9, 2011 and the present. (hereafter the "Nationwide Class").**

93.     **Sub-Class Definition:** Plaintiff Pallagrosi also brings this action as a class action pursuant to Fed.R.Civ.P. 23, seeking damages under New Jersey law on behalf of himself and all members of the following proposed sub-class:

> **All persons who purchased any purportedly discounted item from a Banana Republic Factory or Gap Factory store in New Jersey between October 9, 2011 and the present. (hereafter the "New Jersey Subclass")**

94.     Plaintiff Pallagrosi also brings this action as a class action pursuant to Fed.R.Civ.P. 23, seeking damages under Florida law on behalf of himself and all members of the following proposed sub-class:

> **All persons who purchased any purportedly discounted item from a Banana Republic Factory or Gap Factory store in Florida between October 6, 2011 and the present. (hereafter the "Florida Subclass")**

95.     The scope of the class definitions may be refined after discovery of Defendants' and/or third party records.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

96.     Each of the classes for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

97.     The exact number and identities of the persons who fit within each proposed class are contained in Defendants' records and can be easily ascertained from those records.

98.     The proposed class and subclasses are each composed of at least 10,000 persons.

99.     Common questions of law and fact exist as to each class member.

100.    All claims in this action arise exclusively from uniform policies and procedures of Defendants as outlined herein.

101.    No violations alleged in this Complaint are a result of any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

102.    There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

a.   whether the uniform advertising, marketing, and sales practices alleged herein exist;

b.   whether Defendants ever sold items or offered items for sale at their listed base prices;

c.   whether Defendants' purported percentage-off discounts reflected actual savings or reductions;

d.   whether Defendants deceptively advertised every day, regular prices of their items as "discount" or "sale" prices;

e.   the length of time Defendants engaged in the practices alleged herein;

f.   whether the application of California law is appropriate to the claims of all class members, regardless of where the actual purchases occurred, due to the fact that the scheme in question, including the amount of the fake prices and purported

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

percentage-off discounts, was created in, and emanated from, Defendants' headquarters and primary place of business in California;

g.   whether the alleged practices violate California law; and

h.   the nature and extent of the injury to the classes and the measure of class-wide damages.

103.   Plaintiff is a member of the class and sub-classes he seeks to represent.

104.   The claims of Plaintiff are not only typical of all class members, they are identical.

105.   All claims of Plaintiff and the classes arise from the same course of conduct, policy and procedures as outlined herein.

106.   All claims of Plaintiff and the classes are based on the exact same legal theories.

107.   Plaintiff seek the same relief for himself as for every other class member.

108.   Plaintiff has no interest antagonistic to or in conflict with the classes.

109.   Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent himself and the classes.

110.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, <u>inter alia</u>, the damages suffered by each class member were not great enough to enable them to maintain separate suits against Defendants and in most, if not all, instances were less than $500 per person.

111.   Common questions will predominate, and there will be no unusual manageability issues.

112.   Without the proposed class action, Defendants will likely retain the benefit of their wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

## COUNT I

### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, et seq.

### (On Behalf of the Nationwide Class)

113.    Plaintiff repeats and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

114.    Plaintiff brings this claim individually and on behalf of all other nationwide class members who purchased items from Gap Factory stores and Banana Republic Factory stores pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CCLRA"), because the actions of Defendants, and their conduct described herein, constitute transactions that have resulted in the sale of goods to consumers.

115.    Regardless of where any purchase occurred, California law applies to the claims of Plaintiff and all nationwide class members under the principles articulated in cases such as Pecover v. Elec. Arts Inc., No. C08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *49-52 (N.D. Cal. Dec. 21, 2010) and Keilholtz v Lennox Hearth Products Inc., 268 F.R.D. 330 (ND Cal 2010) because:

  a.   The uniform policies and procedures described herein were created by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;

  b.   The instructions and orders needed to carry out the nationwide uniform scheme alleged herein were issued by Defendants from their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;

  c.   The amounts of the fake base prices and false percentage-off discounts described in this complaint were created by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105; and

  d.   The individual Gap Factory stores and Banana Republic stores had no discretion in implementing this nationwide policy and had no choice but to follow the instructions and policies formulated by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105.

116.     Plaintiff and each class member are "consumers" as defined by California Civil Code § 1761(d).

117.     The items offered for sale at Gap Factory and Banana Republic Factory stores are "goods" within the meaning of California Civil Code § 1761(a). The sale of these items to Plaintiff and the class were "transactions" within the meaning of 1761(e). Defendants intended to, and did in fact, sell these items to Plaintiff and the classes.

118.     Defendants violated the CCLRA in at least the following respects:

   a.   in violation of § 1770(a)(5), Defendants represented that the items for sale had characteristics which they do not have (i.e., that the items have an "original" price when they do not, and are being offered for sale at a discounted price when they are not);

   b.   in violation of § 1770(a)(9), Defendants advertised the items with intent not to sell them as advertised (i.e., the items were advertised as being discounted when Defendants intended to, and did in fact, sell them at their regular prices);

   c.   in violation of § 1770(a)(13), Defendants have made false and misleading statements of fact concerning the existence and amounts of price reductions (i.e., by advertising discounts and offering sale prices that did not exist); and

   d.   in violation of § 1770(a)(16), Defendants represented that the items have been supplied in accordance with previous representations (i.e., that they were sold at a discounted price) when they were not.

119.     By the acts alleged herein, Defendants have violated the CCLRA. Specifically, Defendants:

   a.   Set and advertised an arbitrary base price for items, which price was represented to be the item's "original" or "regular" price despite the fact that such items were never sold or offered for sale at that price;

   b.   Continuously advertised and offered items for sale at a discount off their purported base prices, when the "discounted" sale prices did not actually represent the advertised savings since the items were never offered for sale at their base prices;

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

c. Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices; and

d. Charged their customers the full, regular price for the items rather providing the advertised sale or discounted price.

131.     Defendants knew, or should have known, that their representations, advertisements, and actions were false and misleading.

132.     These acts and omissions constitute unfair, deceptive, and misleading business practices in violation of California Civil Code § 1770(a).

133.     On September 6, 2017, Plaintiff sent notice to Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations with respect to themselves and the classes.

134.     To date, Defendants have not remedied their practices complained of herein.

135.     Defendants' conduct was malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to the public.

136.     Plaintiff and each nationwide class member were injured in fact and lost money as a result of Defendants' deceptive conduct.

137.     Plaintiff now seeks actual, punitive, and statutory damages pursuant to the CCLRA for themselves and the nationwide classes.

## COUNT II

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. 56:8-1, et seq.**

**(On Behalf of the New Jersey Subclass)**

138.     Plaintiff repeats and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

139.   Plaintiff brings this claim individually and on behalf of all other New Jersey subclass members who made purchases in Defendants' Gap Factory and Banana Republic Factory stores in New Jersey.

140.   The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "NJCFA"), applies to all sales made by Defendants to New Jersey consumers from Defendants' Gap Factory and Banana Republic Factory stores.

141.   The NJCFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (App. Div. 1997).

142.   The NJCFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) (**"The [NJCFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public."**).

143.   **"The available legislative history demonstrates that the [NJCFA] was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (App. Div.1985).

144.   For this reason, the **"history of the [NJCFA] is one of constant expansion of consumer protection."** Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (App. Div 2003).

145.   The NJCFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

146.   Specifically, N.J.S.A. 56:8-2 prohibits **"unlawful practices..."** which are defined as:

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

**"The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."**

147.     The catch-all term **"unconscionable commercial practice"** was added to the NJCFA by amendment in 1971 to ensure that the Act covered, <u>inter</u> <u>alia</u>, **"incomplete disclosures."**  <u>Skeer v. EMK Motors, Inc.</u>, 455 A.2d 508, 512 (App.Div. 1982).

148.     In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic.  <u>See</u> <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 462 (N.J. 1994).

149.     In order to state a cause of action under the NJCFA, a plaintiff does not need to show reliance by the consumer.  <u>See</u> <u>Varacallo v. Massachusetts Mut. Life Ins. Co.</u>, 752 A.2d 807 (App. Div. 2000); <u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from **"misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby"**).

150.     Rather, the NJCFA requires merely a causal nexus between the false statement and the purchase, not actual reliance.  <u>See</u> <u>Lee v. Carter-Reed Co., L.L.C.</u>, 4 A.3d 561, 577 (2010) (**"causation under the [NJCFA] is not the equivalent of reliance"**).

151.     As stated by the New Jersey Supreme Court in <u>Lee</u>, 4 A.3d at 580: **"It bears repeating that the [NJCFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**

152.     By the acts alleged herein, Defendants have violated the NJCFA.  Specifically, Defendants:

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

a. Set and advertised an arbitrary base price for numerous items in their stores, which price was represented to be the item's "original" or "regular" price despite the fact that such items were never sold or offered for sale at that price;

b. Continuously advertised and offered items for sale at a discount off their purported base prices, when the "discounted" sale prices did not actually represent the advertised savings since the items were never offered for sale at their base prices;

c. Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices; and

d. Charged their customers the full, regular price for the items, without providing the advertised percentage-off discount.

153.   These uniform practices by Defendants constitute sharp and unconscionable commercial practices relating to the sale of goods in violation of the NJCFA, N.J.S.A. § 56:8-1, et seq.

154.   As alleged herein, Defendants have engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding.

155.   These actions also constitute **"omission[s] of any material fact with intent that others rely upon such concealment,"** as Defendants did not inform Plaintiff and the New Jersey sub-class members that the items offered for sale were not actually discounted at all, but rather were being sold at their everyday, regular prices.   Defendants purposefully omitted this information so that their customers would believe that they were getting a discounted price on the items they purchased from Defendants, when in fact they were not.

156.   As such, Defendants have acted with knowledge that their conduct was deceptive and with intent that such conduct deceive purchasers.

157.   Further, the affirmative statements by Defendants regarding the fake former prices

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

of items, and amount of the purported percentage-off discounts, and the written statements on customer receipts that **"You Saved [a specified dollar amount]"** and/or **"Total Discount [a specified dollar amount]"** were all false, affirmative statements of fact, since the items in question were never sold at the purported former price and the purported "sale" price was actually Defendants' regular price for the item.

158.    Moreover, because Defendants' conduct described herein is a violation of both federal and New Jersey state regulations, such conduct constitutes a per se violation of the NJCFA, N.J.S.A. § 56:8-1, et seq.

159.    Specifically, Defendants' conduct violates 16 C.F.R. § 233.1 in that the purported "original" prices of the items were **"not bona fide but fictitious"** under 16 C.F.R. § 233.1 because the items were never actually sold or offered for sale at those prices.  Thus, the purported **"reduced"** prices offered by Defendants were **"in reality ... [Defendants'] regular price[s]"** and **"the 'bargain[s]' being advertised"** by Defendants were **"false."**  16 C.F.R. § 233.1.

160.    Defendants' conduct also violated both N.J.A.C. 13:45A-9.3(a)(3) and 13:45A-9.4(a)(5) and (6). These regulations require, inter alia, that a seller advertising a purported percentage **"off"** discount and/or price comparison must affirmatively state in writing the basis for the purported discount and the source of the price which is being used for comparison, including whether that price was previously charged by the seller or its competitors and when and where that former price was previously charged. Defendants clearly did not do any of this.

161.    Plaintiff and the New Jersey sub-class members reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

162.    As a direct and proximate result of these unlawful actions by Defendants, Plaintiff and the New Jersey sub-class members have been injured and have suffered an ascertainable loss of money.

163.    As with other terms of the NJCFA, the term "ascertainable loss" is to be construed

liberally in favor of the consumer in order to carry out the NJCFA's broad remedial purposes. Cox v. Sears Roebuck & Co., 138 N.J. 2, 21-22 (1994); In Union Ink Co., Inc. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div. 2002) (holding that the ascertainable loss **"requirement has been broadly defined as embracing more than a monetary loss"**).

164.     The NJCFA does not require a plaintiff to have suffered any out-of-pocket loss. See Union Ink, 352 N.J. Super. at 646:

> **"a victim of consumer fraud must prove an 'ascertainable loss,' N.J.S.A. 56:8-19, but <u>that requirement has been broadly defined as embracing more than a monetary loss</u>." (emphasis added)**

165.     A consumer has experienced an "ascertainable loss" within the meaning of the NJCFA whenever the consumer fails to receive the bargain which was promised by the seller. See International Union v. Merck & Co., 384 N.J. Super. 275, 291 (App. Div. 2006):

> **"Ascertainable loss 'has been broadly defined as <u>more than a monetary loss' and encompasses situations where 'a consumer receives less than what was promised</u>.'" (emphasis added)**

166.     Indeed, in Furst v. Einstein Moomjy, 182 N.J. 1 (2004), the New Jersey Supreme Court rejected the argument that the concept of "ascertainable loss" under the NJCFA is limited to the current out-of-pocket dollar loss suffered by the consumer and held that the term included a situation where a consumer had not received the benefit of a discount promised by the seller. See Furst, 192 N.J. at 13-14:

> **"In light of the Legislature's clear intent [in passing the Consumer Fraud Act], it would be incongruous to provide consumers with a form of damages less than what is available in an ordinary breach-of-contract case. <u>The 'expectation interest' of the consumer who purchases merchandise *at a discount* is the benefit of the bargain</u>. The statute cannot be construed to allow an offending merchant to benefit from his own deception." (emphasis added)**

167.     Plaintiff suffered an ascertainable loss within the meaning of the NJCFA

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

when he failed to receive the full benefit of the purported discount offered by Defendants and when he was lulled into making purchases by the promise of the illusory discounts promised by Defendants.

168.    For example,   Plaintiff Pallagrosi was promised by Defendants that he was receiving a **"60% Off"** discount on his purchase of a "Dorito Crew" shirt and that, for the sum of $5.78, he would receive a shirt that had previously sold for $16.99 and which was worth $16.99. Indeed, the receipt which Defendants gave to Plaintiff Pallagrosi specifically and expressly stated **"Item Discount 60% -10.19."**

169.    As outlined herein, Plaintiff Pallagrosi did not receive the benefit of the promised bargain. He did not receive the promised 60% discount, since there was no discount; the merchandise was being sold at Defendants' normal, everyday prices. Plaintiff Pallagrosi did not save $10.19, as stated on his receipt, since he paid $5.78 for a shirt that was consistently and regularly sold by Defendants for $5.78. In exchange for his payment of $5.78, Plaintiff Pallagrosi did not receive a shirt worth $16.99, as promised by Defendants. Rather, the shirt was not worth $16.99 and its value is, at most, merely the price at which it was regularly and consistently sold by Defendants: $5.78.

170.    Moreover, Plaintiff Pallagrosi would not have made any purchase from Defendants on the day in question but for the false statement by Defendants that the shirt had previously sold for $16.99, that he was receiving a 60% discount, and that the value of the shirt was more than twice what he was being asked to pay for it. Thus, Plaintiff Pallagrosi's entire payment of $5.78 to Defendants was a loss caused by Defendants' misconduct.

171.    Plaintiff would purchase items from Gap Factory and Banana Republic stores in the future if he knew that the purported % "off" discounts and purported price comparisons listed in Defendants' stores were truthful and accurate.

172.    Pursuant to N.J.S.A. 56:8-19 of the NJCFA, Plaintiff seeks, inter alia, actual

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

damages and treble damages for himself and the New Jersey sub-class.

## COUNT III

### VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. § 56:12-14, et seq.

#### (On Behalf of the New Jersey Subclass)

173.    Plaintiff repeats and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

174.    Plaintiff brings this claim individually and on behalf of all other subclass members who were customers of Defendants' Gap Factory and Banana Republic Factory stores in New Jersey.

175.    Plaintiff and the New Jersey subclass members are "consumers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

176.    Defendants are "sellers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

177.    The signs, price tags and written receipts described herein were consumer "notices," "signs" and "warranties" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

178.    By the acts alleged herein, Defendants have violated N.J.S.A. § 56:12-16 because, in the course of Defendants' business, Defendants have presented written consumer notices, signs and warranties to Plaintiff and the New Jersey subclass members which contained provisions that violated their clearly established legal rights under state law and federal regulations, within the meaning of N.J.S.A. § 56:12-15.

179.    The price tags, signs and written receipts as described herein violated the clearly-established rights of Plaintiff and the New Jersey sub-class members under 16 C.F.R. § 233.1 to be free of false purported discounts and the use of fictitious former prices in advertising, as well as their rights under N.J.A.C. 13:45A-9.3(a)(3) and 13:45A-9.4(a)(5) and (6), which require a seller advertising a purported percentage "off" discount and/or a price comparison to affirmatively

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

state in writing the basis for the discount and the source of the price which is being used for comparison, including whether that price was charged by the seller or its competitors and when and where that former price was previously charged.

180.    Pursuant to N.J.S.A. § 56:12-17, Plaintiff seeks a statutory penalty of $100 for each New Jersey sub-class member, as well as actual damages and attorneys' fees and costs.

## COUNT IV

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

### Fla. Stat. § 501.201, et seq.

### (On Behalf of the Florida Subclass)

181.    Plaintiff Pallagrosi repeats and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

182.    Plaintiff brings this claim individually and on behalf of the other members of the Florida Subclass.

183.    Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-.213, Florida Statutes is intended to **"protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."** § 501.202(2). See also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 605-06 (Fla. 2d DCA 1997) (discussing the purpose of FDUTPA in light of its legislative history).

184.    Under the FDUTPA a deceptive practice is one that is "likely to mislead" consumers. Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000).

185.    Under the FDUTPA, an unfair practice is **"one that 'offends established public**

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Samuels v. King Motor Co. of Boca Raton, 782 So.2d 489, 499 (Fla. 4th DCA 2001).

186.    The FDUTPA affords civil private causes of action for both declaratory and injunctive relief and for damages.

187.    With respect to the recovery of damages, FDUTPA provides: In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

188.    A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. See Chicken Unlimited, Inc. v. Bockover, 374 So.2d 96, 97 (Fla. 2d DCA 1979); Gen. Motors Acceptance Corp. v. Laesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998); Macias v. HBC of Fla., Inc., 694 So.2d 88, 90 (Fla. 3d DCA 1997).

189.    The standard for determining the actual damages recoverable under FDUTPA is well-defined in the case law as the difference between the promised value and the actual value of the item delivered.  Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984)(**"[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."**).

190.    Mr. Pallagrosi and the Florida Subclass members have clearly suffered actual recoverable damages within the meaning of the FDUTPA because the goods sold and delivered by Defendants to them had a market value far less than what Defendants had expressly represented and promised they would receive.

191.    For example, Plaintiff Pallagrosi was promised by Defendants in writing that for a

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

payment of $12.49, he would receive from Defendants an "AIDEN CAMO" pants which had previously sold for "$24.99" and which had a market value of $24.99. See Exhibit A. In actuality, the "AIDEN CAMO" pants purchased by Plaintiff Pallagrosi from Defendants had never been sold by anyone for $24.99, the pants were not worth $24.99 and their market value was no higher than the $12.49 for which Defendants routinely sold this item.

192.    Indeed, it is specifically alleged that both the CAMO SOCK's and the AIDEN CAMO pants purchased by Plaintiff had a market value that was less than the prices Plaintiff paid for those items, which value may be ascertained through discovery.

193.    The practices described herein clearly violated the FDUTPA.

194.    The express purpose of the FDUTPA is to **"protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce"** Section 501.202(2).

195.    The sale of the goods purchased by Mr. Pallagrosi fell within the meaning of "trade or commerce" within the scope of the FDUTPA, Sections 501.201 to 501.213.

196.    Mr. Pallagrosi and each Florida class members are "consumer[s]" as defined by Section 501.203.

197.    Section 501.204(1), Florida Statutes declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce". Defendants violated the FDUTPA engaging in, and continuing to engage in, unfair and deceptive practices and false advertising by representing a false and misleading former price (on their price tags and receipts) and corresponding purported "sale" price (on their receipts), resulting in nothing more than a false, misleading and deceptive illusion of a discount (on their signs and receipts). These acts and practices are unfair because they caused Mr. Pallagrosi, and are likely to cause consumers, to falsely believe Defendants are offering values, discounts, and/or bargains from the prevailing market worth of the products sold that did not, in

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

fact, exist, and that Mr. Pallagrosi and Defendants' other customers did not, in fact, receive. As a result, consumers—including Mr. Pallagrosi—reasonably perceived they were receiving products which were regularly sold at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable consumers, including Mr. Pallagrosi, to purchase products from Defendants and/or pay more for such products, which they otherwise would not have purchased.

198.    The reasonable consumer relies on clothing companies to honestly represent the price of the products and any associated discounts. The damages suffered by the Plaintiff and the Florida Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants.

199.    Additionally, pursuant to Sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and the Class make claims for damages, attorney's fees and costs.

200.    On September 6, 2017, Plaintiff sent notice to Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations with respect to themselves and the classes.

201.    To date, Defendants have not remedied their practices complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered in favor of Plaintiff and the classes against Defendants as follows:

A.    Enter an order certifying the proposed classes, designating Plaintiff as the representative for the class and sub-classes he seeks to represent, and designating the undersigned as class counsel;

B.    Declare that Defendants are financially responsible for notifying all class members of their deceptive advertising, sales, and marketing practices alleged herein;

C.    Find that Defendants' conduct alleged herein be adjudged and decreed in

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367

violation of the state laws cited above;

     D.     Grant economic and compensatory damages on behalf of Plaintiff and all members of the classes, to the maximum extent permitted by applicable law;

     E.     Grant statutory, punitive, or exemplary damages as permitted by law;

     F.     Award interest as permitted by law;

     G.     Grant reasonable attorneys' fees pursuant to California Civil Code § 1780 (d) and as otherwise permitted by statute, and reimbursement all costs incurred in the prosecution of this action; and

     H.     Grant such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: October 13, 2017        **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: s/Todd M. Friedman
     Todd M. Friedman, Esq.

and

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
*Admitted Pro Hac Vice*
sdenittis@denittislaw.com
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Tel.:  (856) 797-9951
Fax:  (856) 797-9978
*Attorneys for Plaintiff*

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 OXNARD ST., STE 780
WOODLAND HILLS, CA 91367