LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman, Esquire (216752)
tfriedman@toddflaw.com
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Tel: 877-206-4741
Fax: 866-633-0228

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PALLAGROSI, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE GAP, INC.; GAP (APPAREL) LLC; GAP INTERNATIONAL SALES, INC.; BANANA REPUBLIC, LLC; and BANANA REPUBLIC (APPAREL) LLC,<br><br>Defendants. | Case No. 4:17-cv-05905-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Hearing Date: March 1, 2018<br>Hearing Time: 2:00 p.m.<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Crtrm: 2 – 4th Floor<br><br>Complaint Filed: October 13, 2017 |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES…………………………………………………………...ii-iii

Introduction………………………………………………………………………………..1

Summary of Argument……………………………………………………………………..3

I.    PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE NEW
      JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND
      NOTICE ACT…………………………………………………………………………...4

      A. Defendants' Argument that the TCCWNA Prohibits Nothing
         More than the Inclusion of Invalid Provisions in Written
         Consumer Contracts Contradicts the Plain Language of the
         Statute Itself and the Governing Case Law………………………………………6

      B. The Signs and Notices Which Defendants Displayed to Plaintiff
         Violated His Clearly Established Rights Under New Jersey and Federal Law………..9

         1. The Signs and Notices Which Defendants Displayed to Plaintiff
            Violated His Clearly Established Rights Under the NJCFA to Be
            Free of Misleading Statements in the Sale of Goods………………………………9

         2. The Signs and Notices Which Defendants Displayed to Plaintiff
            Also Violated His Clearly Established Rights Under N.J.A.C. §
            13:45A-9.6(a) and N.J.A.C. § 13:45A-9.2(a)(9)………………………………10

         3. The Signs and Notices Which Defendants Displayed to Plaintiff
            Violated His Clearly Established Rights Under Federal Law……………………11

      C. Defendants' Tactic of Seeking to Rely On Inapplicable Cases, While
         Ignoring the One Published Case Which is Exactly and Precisely on Point,
         Is Misplaced…………………………………………………………………………..12

II.   THE COMPLAINT PLEADS A VIABLE CLAIM UNDER THE FLORIDA
      DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)……………….16

III.  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM
      UNDER THE CLRA IS PREMATURE……………………………………………18

Conclusion………………………………………………………………………………..20

OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT
CASE NO. 4:17-CV-05905-HSG

**CASES**

**Page(s)**

*Barows v. Chase Manhattan Mortg. Corp.*, 465 F.Supp.2d 347, 362 (D.N.J. 2006)................4

*Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 279,
933 A.2d 942, 949 (Super. Ct. App. Div. 2007)...........................................................11

*Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD),
2016 U.S. Dist. LEXIS 169040 (D.N.J. Dec. 7, 2016).............................................12, 15

*Davenport v. Wendy's Co.*, No. 2: 14-cv-00931 JAM DAD,
2014 U.S. Dist. LEXIS 103058, at *24-25 (E.D. Cal. July 25, 2014).............................13

*Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 827 (Fla. Dist. Ct. App. 2010)................16

*Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 34, 171 A.3d 620, 625 (2017)...............12, 13, 14, 15

*Fields v. W. Marine Products Inc.*, 2014 U.S. Dist. LEXIS 16638,
2014 WL 547502 (N.D. Cal. Feb. 7, 2014)...................................................................13

*Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014)....................................19

*Gastaldi v. Sunvest Resort Communities, LC*, 709 F. Supp. 2d 1299, 1304 (S.D.Fla. 2010)......17

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013)..........................................1

*Keilholtz v Lennox Hearth Products Inc.*, 268 F.R.D. 330, 2010 WL 668067, *7
(ND Cal 2010) (Wilken, J)...............................................................................19

*Martina v. LA Fitness Int'l, LLC*, No. 12-2063 (WHW),
2012 U.S. Dist. LEXIS 125209, at *9 (D.N.J. Sep. 4, 2012)........................................10

*McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 281 (3d Cir. 2012).......................11

*Morcom v. LG Elecs. USA, Inc.*, Civil Action No. 16-cv-4833,
2017 U.S. Dist. LEXIS 198935, at *42-43 (D.N.J. Nov. 30, 2017)..........................5, 6, 10

*Moreno v. Baca*, CV 00-7149 ABC (CWx),
2000 U.S. Dist. LEXIS 21368, at *7 (C.D. Cal. Oct. 13, 2000).....................................13

*Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017)..........5, 6, 7, 8, 9, 10, 12, 16

*Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW,
2010 U.S. Dist. LEXIS 140632, at *50-51 (N.D. Cal. Dec. 21, 2010)..............................19

*Posey v. NJR Clean Energy Ventures Corp.*, No. 14-6833 (FLW)(TJB),
2015 U.S. Dist. LEXIS 146688, at *26 (D.N.J. Oct. 29, 2015)......................................11

Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984)……………………………………16

Watkins v. DineEquity, Inc., 591 F. App'x 132, 134 (3d Cir. 2014)………………………………7

**STATUTES**

**Page(s)**

12 C.F.R. § 1013.3(a) (aka Regulation M)……………………………………………………11

16 C.F.R. § 233.1……………………………………………………………………..3, 11, 15

California Legal Remedies Act…………………………………………………………3, 18, 20

Fed.R.Civ.P. 12(b)(6)………………………………………………………………..13, 14, 17

Florida Deceptive and Unfair Trade Practices Act……………………………3, 16, 17, 18

New Jersey Consumer Fraud Act…………………………………………3, 5, 6, 7, 8, 9, 10

New Jersey Truth in Consumer Contract, Warranty and Notice Act,
N.J.S.A. § 56:12-14, et seq.…………………………………………………………passim

N.J.A.C. § 13:45A-9.2(a)(9)…………………………………………………...10, 11, 15

N.J.A.C. § 13:45A-9.6(a)………………………………………………………………..10, 15

**OTHER**

**Page(s)**

7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane,
Federal Practice and Procedure Civil § 1785.3 (3d 2005)…………………………………..13

## Introduction

Common sense dictates that reasonable consumers seek to find a bargain when purchasing retail products. Some retailers – like Defendants – seek to exploit this fundamental part of human nature through deceptive sale and pricing schemes which seek to create the false impression that a consumer is getting a reduced, bargain price by comparing the current price of an item to a purported former price that is entirely fictitious. Such schemes are both unlawful and actionable. As stated by the Ninth Circuit Court of Appeals in Hinojos v. Kohl's Corp., 718 F.3d 1098, 1101 (9th Cir. 2013):

> **"Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading – and effective – the California legislature has prohibited them."**

These words aptly describe the case at bar. Specifically, it is alleged that Defendants engaged in a systematic scheme of false and misleading advertising and sales practices with respect to the sale of apparel and other personal items in their physical brick and mortar stores. This scheme, which is set forth in more detail in the class complaint, may be summarized as follows:

First, Defendants have a uniform policy of creating and listing an arbitrary "fake" base price on the price tag of every item offered for sale in their Banana Republic Factory and Gap Factory stores throughout the United States. This is an artificially high price that purports to be – but is not – each item's original or regular, non-discounted price. These fake base prices are created by Defendants, using a set of uniform criteria created by Defendants, and are not based on

any real prices at which the items in question are actually sold or offered for sale by Defendants or their competitors.

The fake base prices are much higher than the prices at which the items in question are actually sold or offered for sale by Defendants or anyone else. These fake base prices are then used by Defendants to create the misleading impression in the minds of consumers that the prices of the items have been "discounted" when Defendants offer to sell these items at a price far lower than the fake base price. None of the items offered for sale in Defendants' Banana Republic Factory and Gap Factory stores are ever consistently sold at the higher fake base prices. For all such items, the prices at which the items are consistently and regularly sold by Defendants is actually the lower, purportedly-discounted prices.

In addition, Defendants perpetually advertise the items for sale on uniformly-worded signs in their Banana Republic Factory and Gap Factory stores. <u>See</u> Exhibit B to the Complaint, "50% OFF" sign in Defendants' Banana Republic Factory store. This practice is deceptive and misleading because the advertised percentage-off discounts claimed on such signs – such as "50% OFF" – do not represent an actual discount. Rather, the purported percentage–off discount listed on such signs merely represents the difference between the higher fake base price created by Defendants and the lower, purportedly-discounted price at which Defendants regularly sell the item in the normal course of business.

Finally Defendants bolster the above-referenced scheme by presenting customers at their Banana Republic Factory and Gap Factory stores with a written receipt which state **"You Saved [a specific dollar amount]"** and/or **"Total Discount [a specific dollar amount]."** <u>See</u> Exhibit A to Complaint, Pallagrosi Receipt from Banana Republic Factory store, stating **"You Saved 79.24."** The statements on these receipts are false and misleading. The amount of the purported "savings" listed on such receipts is simply the difference between the higher fake base

OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT
CASE NO. 4:17-CV-05905-HSG

price created by Defendants and the lower purportedly-discounted price at which the item is regularly and consistently sold by Defendants in the ordinary course of business. Thus, the purported "savings" claimed on such receipts are entirely illusory. Customers are not actually saving anything. They are simply buying an item at the same price at which Defendants regularly and consistently sell the item in question.

Defendants' policies as described herein are unlawful. Federal regulations prohibit the advertising of fake former prices, "phantom" price reductions and deceptive claims of percentage-off discounts which are based on inflated, fictitious "regular" prices that never actually existed. See 16 C.F.R. § 233.1. Moreover, the consumer protection laws of California, New Jersey and Florida prohibit deceptive advertising, marketing, and sales practices, including advertising and selling items at purported discounts and offering purported discounts that do not actually exist. By advertising these purported percentage-off discounts and these fake former prices, Defendants have violated California, New Jersey and Florida consumer protection laws as well as federal regulations.

Based on the foregoing, Plaintiff brings this lawsuit against Defendants on behalf of himself and several proposed classes of customers of Gap Factory and Banana Republic Factory stores.

**Summary of Argument**

Defendants admit that the complaint states at least one viable claim in that Defendants' current motion does not seek to dismiss the New Jersey Consumer Fraud Act claim pleaded in Count II of the Complaint. Defendants' motion is limited to seeking dismissal of the following three counts: Count I (a claim under the California Legal Remedies Act), Count III (a claim under the New Jersey Truth in Consumer Contract, Warranty and Notice Act) and Count IV (a claim under the Florida Deceptive and Unfair Trade Practices Act).

In actuality, each of these counts states a viable claim against Defendants at the pleading stage. Defendants' arguments are each based on either ignoring the facts actually pleaded in the complaint, a misreading of established law, or both. For the reasons set forth in detail herein, Defendants' motion fails to establish that any portion of the complaint should be dismissed and their motion should be denied in its entirety.

## I.    PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT

Defendants have hopelessly mangled the law surrounding the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 et seq. ("TCCWNA"). TCCWNA is unique in that the statute itself does not create any substantive rights, but rather provides a private New Jersey statutory cause of action for any instance where a seller of goods or services **"offers"** or **"displays"** a **"consumer contract," "warranty," "notice"** or **"sign"** to consumers which violates the clearly established rights of the consumer arising under any other state or federal law. See N.J.S.A. § 56:12-15. Put simply, TCCWNA essentially "borrows" legal rights from other state and federal statutes and regulations, and makes it illegal for a seller to, inter alia, display a notice or sign to a prospective consumer whose terms violates the rights generated by these other statutes and regulations, even if no purchase is actually made and no contract is ever formed. See N.J.S.A. § 56:12-15.  Thus, **"the NJ TCCWNA can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages."** Barows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347, 362 (D.N.J. 2006) (emphasis added). Seen against this backdrop, Defendants' arguments as to the TCCWNA claim pleaded in Count III of the complaint in the case at bar are inapplicable and without merit.

Less than one year ago, Judge Henderson held that allegations that the same Defendants displayed signs and notices which violated a New Jersey consumer's rights under the New Jersey Consumer Fraud Act ("NJCFA") to be free of misleading statements in a sale of goods (i.e., the same claim as pleaded in the case at bar) stated a viable claim under the TCCWNA. See Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017) (holding **"Defendant's motion to dismiss Plaintiff's TCCWNA claim is DENIED"** because **"New Jersey courts have held that a [NJ]CFA violation constitutes a violation of a 'clearly established legal right' for TCCWNA purposes,' the Court finds Plaintiff has a valid TCCWNA claim."**) (citation omitted).

Every single detail of the unlawful practices and TCCWNA claim at issue in Munning and the case at bar are identical with one exception: Munning involved digital signs and notices that appeared on a website and the case at bar involves physical signs and notices which were posted next to the merchandise in a brick and mortar store; a fact which no one contends makes any difference to the legal analysis. Judge Henderson's decision that such conduct states a viable claim under the TCCWNA was clearly correct.[1] Indeed, less than six weeks ago, the District of New Jersey itself cited Judge Henderson's TCCWNA ruling in Munning, and relied upon that ruling in sustaining a TCCWNA claim. See Morcom v. LG Elecs. USA, Inc., Civil Action No. 16-cv-4833, 2017 U.S. Dist. LEXIS 198935, at *42-43 (D.N.J. Nov. 30, 2017).[2] Specifically, the District of New Jersey followed Judge Henderson's ruling in Munning that a violation of the New

---

[1] Defendants' current motion refers to the TCCWNA claim pleaded in the case at bar as "unprecedented," ignoring the fact that it is the same TCCWNA claim – applied to virtually the exact same facts – against the very same defendants which the Northern District of California upheld in Munning in a contested motion to dismiss less than one year ago.

[2] It is submitted that it is not often that a federal court sitting in New Jersey cites a ruling by a federal judge sitting in California on a point of New Jersey statutory law. The fact that the District of New Jersey did so shows that Judge Henderson's ruling on the TCCWNA claim is accepted as correct even by courts sitting in New Jersey who apply the TCCWNA every day.

Jersey Consumer Fraud Act can serve as the predicate "clearly established right' needed to trigger

a TCCWNA violation, quoting from <u>Munning</u> as it did so. <u>Morcom</u>, 2017 U.S. Dist. LEXIS

198935, at *42-43:

> **"as stated above, [plaintiff] 'has sufficiently alleged a violation of the NJCFA.' Munning v. Gap. Inc., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017) (applying New Jersey law). 'Thus, [plaintiff's] NJCFA claim may serve as the predicate violation for a TCCWNA claim.' <u>Id</u>. <u>Because 'New Jersey courts have held that a [NJ]CFA violation constitutes a violation of a 'clearly established legal right' for TCCWNA purposes,' the Court finds [plaintiff] has a valid TCCWNA claim." Id. (emphasis added)**

> **A. <u>Defendants' Argument that the TCCWNA Prohibits Nothing More than the Inclusion of Invalid Provisions in Written Consumer Contracts Contradicts the Plain Language of the Statute Itself and the Governing Case Law</u>**

The first argument regarding the TCCWNA raised by Defendant is entitled **"The**

**TCCWNA protects against the inclusion of legally invalid or unenforceable provisions in**

**consumer contracts, nothing more."** <u>See</u> Defense Brief at Page 12. As the title of this argument

suggests, Defendants go on to argue that the TCCWNA merely prohibits illegal provisions in

consumer contracts and nothing more. This argument is not only contrary to law but also

contradicts the plain language of the statute itself.  Indeed, this argument is so clearly erroneous

that it is difficult to know where to begin in explaining how and why this argument is wholly

without merit.

The statute is called the **"Truth in Consumer Contract, Warranty <u>and Notice</u> Act,"** <u>not</u>

the **"Truth in Consumer Contract Act."** (emphasis added). The words of the statute itself make

perfectly clear that, while the statute does prohibit unlawful provisions in consumer contracts, it

does more than that. The statute also plainly covers the situation where a vendor **"displays"** a

**"sign"** or **"notice"** to a consumer in the course of his business which violates any clearly

established rights of the consumer arising under either state or federal law. See <u>N.J.S.A</u>. § 56:12-15 of the TCCWNA:

> **"No seller . . . shall in the course of his business offer to any consumer or prospective consumer . . . <u>*or display* any written . . . *notice or sign*</u> . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed <u>or . . . notice or sign is given *or displayed*</u>." (emphasis added)**

<u>See</u> <u>also</u> <u>Watkins v. DineEquity, Inc</u>., 591 F. App'x 132, 134 (3d Cir. 2014), listing the elements of a TCCWNA claim, stating:

> **"To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives <u>or *displays* any written notice, *or sign*</u>; and (4) the contract, <u>notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller.</u>"**

Judge Henderson understood this and correctly applied this law in denying the motion to dismiss the nearly identical TCCWNA claim against these same defendants in <u>Munning v. Gap, Inc</u>., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017). (**"In order to bring a claim under the New Jersey TCCWNA, a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the defendant gives <u>or displays</u> any written consumer <u>notice or sign</u>; and (4) <u>the notice or sign includes a provision that violates any clearly established legal right of a consumer or responsibility of a seller.</u>" (emphasis added)**)). Indeed, there was no written contract at all between the defendants and the plaintiff in <u>Munning</u>. The TCCWNA violation in <u>Munning</u>, like the TCCWNA violation in the case at bar, was based on the fact that Defendants displayed consumer signs and notices to New Jersey customers which contained false and inflated purported former prices, in violation of the consumers' rights under the New Jersey Consumer

Fraud Act and several New Jersey regulations which expressly prohibit the use of such "fake" former prices in advertisements for merchandise.

Plaintiff's complaint plainly meets all four of the elements of a TCCWNA claim as outlined above. It is alleged (and is undisputed) that Plaintiff is a consumer. See Complaint at Paragraph 175. It is alleged (and is undisputed) that Defendants are sellers of merchandise. See Complaint at Paragraph 176. It is alleged that, in the course of their business, Defendants displayed consumer signs, receipt documents and notices to Plaintiff and each member of the New Jersey sub-class. See Complaint at Paragraphs 177-179. It is alleged that these signs and notices violated Plaintiff's rights under the New Jersey Consumer Fraud Act and two New Jersey regulations which directly prohibit the use of "fake" former price statements in advertisement and a federal regulation which does the same. See Complaint at Paragraphs 159, 160 and 179.

Nothing in the language of the TCCWNA or the case law requires that there be a written contract – or any contract – between Plaintiff and Defendants. Nor is it required that the language comprising the violation appear in a written contract. The allegation that Defendants, in the course of their business, displayed signs and notices to Plaintiff which, inter alia, violated Plaintiff's rights under the New Jersey Consumer Fraud Act to be free from deceptive statements relating to the sale of goods is sufficient, by itself, to state a viable claim under the TCCWNA; something which Judge Henderson himself found in a related case against these exact same defendants! See Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017) (holding that the allegation that Defendants displayed signs and notices on their website bearing inflated purported former prices in violation of Plaintiff's rights under the New Jersey Consumer Fraud Act stated a viable claim under the TCCWNA).

**B.  The Signs and Notices Which Defendants Displayed to Plaintiff Violated His Clearly Established Rights Under New Jersey and Federal Law**

The complaint outlines three alternative legal theories for how and why the signs and notices displayed to Plaintiff by Defendants in the course of their business violated his clearly established rights under New Jersey state law and federal law, as prohibited by the TCCWNA. Defendants' brief makes no real attempt to dispute this, other than to try to confuse a federal court sitting in California about an issue of New Jersey law with which it may not be entirely familiar.

**1.  The Signs and Notices Which Defendants Displayed to Plaintiff Violated His Clearly Established Rights Under the NJCFA to Be Free of  Misleading Statements in the Sale of Goods**

First, it is alleged in the complaint that the signs and notices which Defendants displayed to Plaintiff in their store contained deceptive and misleading language which violated Plaintiff's clearly established right under the NJCFA to be free of false and/or misleading statements made during a sale of goods. This is <u>exactly</u> the same TCCWNA claim which Judge Henderson upheld against these exact same Defendants in <u>Munning</u> last February. <u>See</u> <u>Munning v. Gap, Inc</u>., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017):

> **"Defendants argue Plaintiff's TCCWNA claim still cannot survive a motion to dismiss because she has failed to establish a predicate violation of a clearly established right. However, as stated above, Plaintiff has sufficiently alleged a violation of the NJCFA….Thus, Plaintiff's NJCFA claim may serve as the predicate violation for a TCCWNA claim. Because 'New Jersey courts have held that a [NJ]CFA violation constitutes a violation of a 'clearly established legal right' for TCCWNA purposes,' the Court finds Plaintiff has a valid TCCWNA claim."** (emphasis added) (citations omitted)

Defendants' current motion offers no cogent argument as to why Defendants contend Judge Henderson was wrong. The reason for this is that Judge Henderson's ruling in <u>Munning</u> on the TCCWNA issues was perfectly correct. That conclusion is bolstered by the fact that as recently as November 30, 2017, the District of New Jersey cited and followed Judge Henderson's

ruling on the TCCWNA claim in <u>Munning</u> in <u>Morcom v. LG Elecs. USA, Inc</u>., Civil Action No. 16-cv-4833, 2017 U.S. Dist. LEXIS 198935, at *42-43 (D.N.J. Nov. 30, 2017) (citing <u>Munning</u> and quoting from Judge Henderson's ruling in ruling that the violation of the NJCFA was sufficient to meet the TCCWNA's "clearly established right" element). <u>See also</u> <u>Martina v. LA Fitness Int'l, LLC</u>, No. 12-2063 (WHW), 2012 U.S. Dist. LEXIS 125209, at *9 (D.N.J. Sep. 4, 2012): (**"New Jersey courts have held that a CFA violation constitutes a violation of a 'clearly established legal right' for TCCWNA purposes."**).

In the case at bar, Defendants have not moved to dismiss Plaintiff's NJCFA claim. Thus, Defendants have effectively conceded that the complaint alleges a viable NJCFA violation. Exactly like the complaint in <u>Munning</u>, the complaint in the case at bar alleges that Defendants' act of displaying signs and notices to Plaintiff – signs and notices which bore false and inflated purported former prices –  violated Plaintiff's clearly established right under the NJCFA to be free of misleading statements in the sale of goods. As found by Judge Henderson in <u>Munning</u>, that is a perfectly viable theory under the TCCWNA. <u>See</u> <u>e.g.</u> <u>Munning</u>, 238 F. Supp. 3d at 1202. Nothing said in Defendants' brief refutes that conclusion. Rather, Defendants' strategy for dealing with the TCCWNA ruling in the <u>Munning</u> opinion appears to be to ignore it and hope the court in the case at bar does the same.

**2. <u>The Signs and Notices Which Defendants Displayed to Plaintiff Also Violated His Clearly Established Rights Under N.J.A.C. § 13:45A-9.6(a) and N.J.A.C. § 13:45A-9.2(a)(9)</u>**

The complaint also alleges that the signs, price tags and notices bearing the false and inflated former prices which Defendants displayed to Plaintiff violated another clearly established right under New Jersey state law: rights arising from published New Jersey regulations which expressly prohibit advertisers from listing a fake purported former price in an advertisement for merchandise. <u>See</u> <u>N.J.A.C</u>. § 13:45A-9.6(a), which states: **"An advertiser shall not use a**

**fictitious former price"**. See also <u>N.J.A.C</u>. § 13:45A-9.2(a)(9), which prohibits **"The making of false or misleading representations of facts concerning the reasons for, existence or amounts of price reductions…"**.

It is hard to imagine a clearer indication that the practices complained of violate New Jersey law. But yet again, Defendants' tactic is to ignore the existence of two published New Jersey regulations which clearly and expressly prohibit Defendants from doing exactly what Defendants are alleged to have done: listing a fake purported former prices in signs and other advertisements which Defendants displayed to Plaintiff and the New Jersey sub-class. There is no question that published New Jersey regulations can give rise to clearly established rights and that the violation of such rights can support a TCCWNA claim. See <u>Bosland v. Warnock Dodge, Inc</u>., 396 N.J. Super. 267, 279, 933 A.2d 942, 949 (Super. Ct. App. Div. 2007) (conduct which **"violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA."**).

### 3. <u>The Signs and Notices Which Defendants Displayed to Plaintiff Violated His Clearly Established Rights Under Federal Law</u>

Finally, it is alleged that Defendants' conduct in displaying signs and tags to Plaintiff and the New Jersey sub-class which list fake purported former prices violates Plaintiff's clearly established rights under 16 C.F.R. § 233.1, which prohibits the use of fake and inflated former prices in sales advertisements. There is no question that a published regulation can give gives rise to a "clearly established right" under TCCWNA. See <u>McGarvey v. Penske Auto Grp., Inc</u>., 486 F. App'x 276, 281 (3d Cir. 2012) (holding that a TCCWNA violation could be premised on violation of a New Jersey state sales regulation. See also <u>Posey v. NJR Clean Energy Ventures Corp</u>., No. 14-6833 (FLW)(TJB), 2015 U.S. Dist. LEXIS 146688, at *26 (D.N.J. Oct. 29, 2015), (TCCWNA claim could be premised on a violation by the seller of a federal regulation, 12 C.F.R.

§ 1013.3(a) (aka Regulation M)). Accordingly, this is yet another clearly established right which was violated by Defendants' display of the signs and tags at issue.

### C. **Defendants' Tactic of Seeking to Rely On Inapplicable Cases, While Ignoring the One Published Case Which is Exactly and Precisely on Point, Is Misplaced**

As noted previously, the case of <u>Munning v. Gap, Inc</u>., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. Feb. 24, 2017) is directly on point with regard to the TCCWNA claim pleaded in the case at bar. Indeed, it is more than merely "on point," because it is hard to imagine any case where the facts, the claims and the law are closer to those in the case at bar than those at issue in <u>Munning</u>. Both cases involve the exact same Defendants. Both cases involve the exact same practice: posting notices and signs which list fake purported former prices for clothing. Both cases allege that the act of displaying such notices and signed to customers violates the TCCWNA. Literally, the only difference between the two cases is that one involves sales in brick and mortar stores and the other involves sales on a website; a difference which no one argues is relevant to TCCWNA claims. Yet, Defendants fail to make any real attempt to distinguish Judge Henderson's ruling in <u>Munning</u> that the conduct at issue states a viable TCCWNA claim under New Jersey law or explain why they contend Judge Henderson's ruling was wrong. Instead, Defendants cite and misapply two cases whose facts and legal issues are wildly different from those in the case at bar: <u>Dugan v. TGI Fridays, Inc</u>., 231 N.J. 24, 34, 171 A.3d 620, 625 (2017) and <u>Cannon v. Ashburn Corp</u>., No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040 (D.N.J. Dec. 7, 2016). This attempt at misdirection is without merit.

<u>Dugan</u> is about as far from the case at bar as it is possible to get. Perhaps most importantly, the procedural postures of <u>Dugan</u> and the case at bar are completely different. <u>Dugan</u> did not involve a motion to dismiss. The <u>Dugan</u> court never even ruled that the <u>Dugan</u> plaintiff failed to state a viable claim under the TCCWNA. Indeed, the <u>Dugan</u> court declined to

rule whether or not an omission in a menu could give rise to a viable TCCWNA claim. See

Dugan, 231 N.J. at 70-71, 171 A.3d at 647-648 (2017) (**"We do not determine whether a**

**defendant restaurant's presentation of a menu that omits beverage prices gives rise to a**

**TCCWNA claim."**)

Rather, Dugan involved a class certification motion, made after full discovery, and

revolved around the issue of whether the plaintiff had offered enough evidence to show that

common issues predominated sufficiently to allow class certification. See Dugan v. TGI Fridays,

Inc., 231 N.J. 24, 34, 171 A.3d 620, 625 (2017) (stating **"In these consolidated appeals, the**

**Court applies the class action certification standard of Rule 4:32-1."**). The ruling in Dugan

revolved around the fact that the Dugan plaintiff had not offered sufficient evidence to show that

he could prove certain elements on a class-wide basis (something not at issue in the motion to

dismiss in the case at bar).[3] See Dugan, 231 N.J. at 72, 171 A.3d at 648-649 (discussing how the

---

[3] The complaint in the case at bar alleges as a factual matter that the signs and notices at issue were
displayed to every member of the proposed New Jersey sub-class and, unlike the Dugan plaintiff, Plaintiff
Pallagrosi will prove this fact with sufficient evidence when the class certification is actually made in the
case at bar. Until then, any argument by Defendants that the court should "strike" the complaint's request
to certify a sub-class of New Jersey customers on the TCCWNA claim is premature on a motion to dismiss
under Fed.R.Civ.P. 12(b)(6), as are any other arguments Defendants raise in the current motion about what
classes may or may not be certified in the future. It is well-established that any such class arguments
should be addressed after a class certification is actually filed, after discovery. See Fields v. W. Marine
Products Inc., 2014 U.S. Dist. LEXIS 16638, 2014 WL 547502 (N.D. Cal. Feb. 7, 2014) (denying the
defendant's motion to strike class allegations, noting that **"such motions are disfavored because a
motion for class certification is a more appropriate vehicle"** for evaluating compliance with Rule 23);
Moreno v. Baca, CV 00-7149 ABC (CWx), 2000 U.S. Dist. LEXIS 21368, at *7 (C.D. Cal. Oct. 13, 2000)
(stating on a motion to dismiss: **"The Court finds that the request to strike the class allegations is
premature. Generally, the Court reviews the class allegations through a motion for class
certification."**); Davenport v. Wendy's Co., No. 2: 14-cv-00931 JAM DAD, 2014 U.S. Dist. LEXIS
103058, at *24-25 (E.D. Cal. July 25, 2014) (**"courts 'routinely deny motions to strike class allegations
as premature' when no answer has been filed, discovery has not commenced, and no motion for
class certification has been filed"** and noting **"the many instances in which district courts within the
Ninth Circuit have determined that motions to strike class allegations are premature under similar
circumstances."**) See also 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice
and Procedure Civil § 1785.3 (3d 2005) (noting that the practice employed in the overwhelming majority
of class actions is to resolve class certification issues only after an appropriate period of discovery and not
on a motion to dismiss).

plaintiff had not offered evidence sufficient to prove that every class member had been given a menu). The current motion to dismiss is being made solely on the pleadings, with no opportunity for discovery, and all facts pleaded in the complaint must be accepted as true on this Fed.R.Civ.P. 12(b)(6) motion.

The factual circumstances of <u>Dugan</u> are also very different. <u>Dugan</u> involved a restaurant which was charging two different prices for the same drinks: one price in its dining room and another price in its bar. The basis of the TCCWNA claim was that the menus did not reveal this fact.[4] The case at bar, in contrast, <u>does not</u> involve a menu. Rather, the case at bar involves a "sign," which was displayed by Defendants to Plaintiff in the course of Defendants' business of selling clothing. There is no question that such conduct is covered directly by the plain language of the TCCWNA statute itself. <u>See</u> <u>N.J.S.A</u>. § 56:12-15 (No seller shall in the course of his business **"display any written . . . notice or sign…"** which violates clearly established rights under state or federal law) (emphasis added). Also, unlike <u>Dugan</u>, the case at bar <u>does not</u> involve an omission (<u>i.e.</u>, the failure to reveal to reveal something). Rather, the case at bar involves affirmative written false statements which Defendants placed on written signs which Defendants then displayed directly to Plaintiff (<u>i.e.</u>, false statements on signs claiming that the fake purported former prices listed on the signs and tags were genuine) to induce a purchase.

Finally, there are significant legal differences between <u>Dugan</u> and the case at bar. The <u>Dugan</u> plaintiff could not point to any regulation or statute that expressly required the defendant to list its drink prices on the menu or to reveal the fact that it charged two different prices. In the case at bar, the opposite is true. The conduct at issue in the case at bar – listing fake and inflated purported former prices in advertisements for merchandise – is directly and expressly prohibited

---

[4] Again, the court in <u>Dugan</u> expressly declined to rule whether or not omitting drink prices from a menu could violate the TCCWNA. <u>See</u> <u>Dugan</u>, 231 N.J. at 70-71, 171 A.3d at 647-648.

by two published New Jersey regulations and at least one federal regulation. See N.J.A.C. § 13:45A-9.6(a) (**"An advertiser shall not use a fictitious former price"**); N.J.A.C. § 13:45A-9.2(a)(9) (**"The making of false or misleading representations of facts concerning the reasons for, existence or amounts of price reductions…"**). See also 16 C.F.R. § 233.1 (prohibiting the use of fake and inflated former purported prices in sales advertisements). Thus, unlike Dugan, the TCCWNA claim in the case at bar is based on a very clear prohibition that applies directly to the conduct alleged which is set forth in published regulations.

The other case which Defendants rely upon is Cannon v. Ashburn Corp., No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040 (D.N.J. Dec. 7, 2016), is an unpublished district court opinion. Cannon is also nothing like the case at bar. Like Dugan, Cannon relied upon a theory that the defendant omitted certain information from the label of wine purchased by consumers. Once again, the complaint in the case at bar does not rely on any omissions whatsoever. Rather, Plaintiff's claim is based on affirmative statements on signs displayed to Plaintiff by Defendants in the course of their business as sellers. This is conduct that falls squarely into the acts prohibited by N.J.S.A. § 56:12-15 of the TCCWNA. Moreover, Cannon did not involve the violation of any state or federal statutes or regulations which expressly required the omitted statements to be made. Indeed, the Cannon plaintiff could not point to any state or federal regulation or statute which prohibited the conduct challenged. In the case at bar, two published New Jersey state regulations and one federal regulation all directly and expressly prohibit the practice of listing fake and inflated purported former prices in the advertising of merchandise. See N.J.A.C. § 13:45A-9.6(a), N.J.A.C. § 13:45A-9.2(a)(9) and 16 C.F.R. § 233.1.

In summary, the Dugan and Cannon cases are not "on point" and neither offers any reason to dismiss Plaintiff's TCCWNA claim. The case which is clearly on point – indeed, is virtually

identical to the case at bar – is <u>Munning</u>, where the Northern District of California upheld a virtually identical TCCWNA claim against these same Defendants.

## II. THE COMPLAINT PLEADS A VIABLE CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)

Defendants' argument in support of their motion to dismiss the FDUTPA claim pleaded in Count IV is built completely on ignoring the claims actually pleaded in the complaint in favor of some "strawman" argument created by Defendants. Specifically, Defendants argue – incorrectly – that Plaintiff's FDUTPA claim is based on his subjective "disappointment" with the merchandise and/or the fact that Defendants lied to him. Based on that erroneous misstatement of Plaintiff's claim, Defendants go on to argue – correctly this time – that Florida law holds that the FDUTPA does not allow recovery for emotional or subjective damages.

The fatal flaw in Defendants' argument is that it ignores the FDUTPA claim actually pleaded in the complaint and the entirely objective and legally-recognized basis of damages set forth therein. Plaintiff <u>is not</u> seeking emotional damages or basing his damage request on any subjective feeling of disappointment. Rather, the complaint very clearly sets forth the entirely objective and legally well-established basis for the damages he seeks under the FDUTPA. <u>See</u> Complaint at Paragraphs 189-192.

The objective and legally – recognized standard for determining the actual damages recoverable under FDUTPA is well-defined in the case law as the difference between the promised value and the actual value of the item delivered. <u>Rollins, Inc. v. Heller</u>, 454 So.2d 580, 585 (Fla. 3d DCA 1984) (**"[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."**); <u>Dorestin v. Hollywood Imps., Inc.</u>, 45 So. 3d 819, 827 (Fla. Dist. Ct. App. 2010)

(recognizing that the FDUTPA allows for recovery of the loss of the **"benefit of the bargain"** which **"utilizes an expectancy theory, evaluat[ing] the difference between the value as represented and the value actually received."**). See also Gastaldi v. Sunvest Resort Communities, LC, 709 F. Supp. 2d 1299, 1304 (S.D.Fla. 2010) (noting that the measure of damages under the FDUTPA is essentially the benefit of the bargain method borrowed from contract law: the market value of the product as represented minus the market value of the product delivered).

 This is exactly what Mr. Pallagrosi alleges: that the goods sold and delivered by Defendants to him had a market value far less than what Defendants had expressly represented and promised he would receive. See Complaint at Paragraph 190-191:

> **"190. Mr. Pallagrosi and the Florida Subclass members have clearly suffered actual recoverable damages within the meaning of the FDUTPA <u>because the goods sold and delivered by Defendants to them had a market value far less than what Defendants had expressly represented and promised they would receive.</u>**
>
> **191. For example, <u>Plaintiff Pallagrosi was promised by Defendants in writing that for a payment of $12.49, he would receive from Defendants an "AIDEN CAMO" pants which had previously sold for "$24.99" and which had a market value of $24.99.</u> See Exhibit A. In actuality, the "AIDEN CAMO" pants purchased by Plaintiff Pallagrosi from Defendants <u>had never been sold by anyone for $24.99, the pants were not worth $24.99 and their market value was no higher than the $12.49 for which Defendants routinely sold this item."</u> (emphasis added**)

 Like every other factual allegation in Plaintiff's complaint, these factual allegations must be accepted as true on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Defendants cannot win such a motion by denying or ignoring such pleaded facts. Nor can they change the actual basis of Plaintiff's pleaded claim to suit their own need for a "strawman." Defendants' refusal to accept the facts pleaded in the complaint as true, coupled with Defendants' refusal to follow well-

established Florida law which is applicable to such factual allegations, does not amount to a reason to dismiss Plaintiff's FDUTPA claim.

## III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM UNDER THE CLRA IS PREMATURE

Defendants argue that because Plaintiff purchased merchandise from Defendants' stores in New Jersey and Florida, the court should dismiss Count I of the complaint, which seeks certification of a nationwide class under the CLRA. In support of that argument, Defendants engage in a lengthy and complex "choice of law" argument, arguing that New Jersey and Florida law should be applied to Plaintiff's claims and that it is impossible that California law could apply. It is submitted that Defendants' argument as to Count I is premature.

Plaintiff's complaint sets forth a wealth of factual allegations which show exactly why he contends that California law should apply and a nationwide class may be certified over the claims in this matter under the CLRA. Put simply, Plaintiff alleges facts showing that while the final effects of this action may have been felt in New Jersey and Florida, the origin of the policy and deliberate actions of which he complains originated entirely in, and largely took place in California, thereby giving California a very large interest in this matter. <u>See</u> Complaint at Paragraphs 19-21:

> **"19. Defendants jointly operate the Gap Factory stores and Banana Republic Factory stores out of their headquarters in California, which operation entails, <u>inter</u> <u>alia</u>, the creation and implementation of the advertising, marketing, and sales policies described herein, including the sale of items.**
>
> **20. Defendants created the policies and procedures described herein and, at all times during the relevant class period, participated in, endorsed, implemented, and performed the conduct alleged herein.**
>
> **21. Under the principles articulated in cases such as <u>Pecover v. Elec. Arts Inc.</u>, No. C08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at \*49-52 (N.D. Cal. Dec. 21, 2010) and <u>Keilholtz v. Lennox Hearth Products Inc.</u>, 268 F.R.D. 330 (ND Cal 2010), the application of California law to the**

claims of all class members, regardless of where the class member's purchase occurred, is appropriate because:

**a. The uniform policies and procedures described herein were created by Defendants at their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;**

**b. The instructions and orders needed to carry out the nationwide uniform scheme alleged herein were issued by Defendants from their headquarters and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105;**

**c.** *The amounts of the fake base prices and false percentage-off discounts described in this complaint were created by Defendants at their headquarters and principal place of business* **at 2 Folsom Street, 13th Floor, San Francisco, California 94105; and**

**d.** *The individual Gap Factory stores and Banana Republic Factory stores had no discretion in implementing this nationwide policy and had no choice but to follow the instructions and policies formulated by Defendants at their headquarters* **and principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105."**

Defendants do not appear to concede the truth of these factual allegations. Instead, they largely argue around them and maintain that the law applicable to consumer fraud type claims must always be wherever the final sale took place. But as noted in Frenzel v. Aliphcom, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) (**"choice of law analysis is a fact-specific inquiry which requires a more developed factual record than is generally available on a motion to dismiss."**). Cases such as Pecover v. Elec. Arts Inc., No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *50-51 (N.D. Cal. Dec. 21, 2010) point out that courts consider several different factors in addition to the location of the sale in determining choice of law issues. For example, in Keilholtz v Lennox Hearth Products Inc., 268 F.R.D. 330, 2010 WL 668067, *7 (ND Cal 2010) (Wilken, J), the court certified a nationwide class with product liability claims under California law against a fireplace manufacturer, despite the fact that most of the defendant's fireplaces were sold outside California. Based on the facts pleaded above, it is submitted that it is

not clear to a legal certainty at the pleading stage that Plaintiff lacks standing to pursue claims under the CLRA, or that a nationwide class can never be certified in this matter under the CLRA. Rather, Plaintiff requests that Defendants' "choice of law" argument, and the decision as to whether a nationwide class can ever be certified in this matter under the CLRA, should await discovery and be revisited at a later juncture.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Counts I, III and IV of the complaint should be denied.

Dated: January 17, 2018                     LAW OFFICES OF TODD M. FRIEDMAN, P.C.

                                            By: _/s/ Todd M. Friedman_____
                                                 Todd M. Friedman

                                            and

                                            DeNITTIS OSEFCHEN PRINCE, P.C.
                                            Stephen P. DeNittis
                                            *Pro Hac Vice pending*
                                            sdenittis@denittislaw.com
                                            525 Route 73 North, Suite 410
                                            Marlton, NJ 08053
                                            Tel: 856-797-9951
                                            Fax: 856-797-9978

                                            *Attorneys for Plaintiff Michael Pallagrosi*

1      **PROOF OF SERVICE**

2           I, Todd M. Friedman, state the following:

3   I am employed in Woodland Hills, California; I am over the age of 18 and am not a party to this
    action; my business address 21550 Oxnard Street, Suite 780, Woodland Hills, CA 91367.  On
4   January 17, 2018, I served the following documents:

5   **Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Class Action Complaint**

6           On the parties listed below:

7   Joseph Duffy, Esq.
    Esther K. Ro, Esq.
8   Morgan, Lewis & Bockius, LLP
    Attorneys for Defendants
9

10          By the following means of service:

11  [X]     **BY ELECTRONIC CASE FILING:**  I filed the submitted document listed above via the
            court's Electronic Case Filing (ECF) system which provides electronic mail (email)
12          service of the listed document directly to the party listed above to his/her "email address
            of record."

13

14  [X]     **STATE:**  I declare under penalty of perjury under the laws of California that the above is
            true and correct.

15          Executed on January 17, 2018, in Woodland Hills, California.

16                                                  By:     /s/ Todd M. Friedman
17                                                          Todd M. Friedman

18

19

20

21

22

23

24

25

26

27

28